Martin EISENBERG and Arthur Nissen, on behalf of themselves and all others similarly situated

v.

Frederick M. GAGNON, Bernard A. Boyers, David E. Wasserstrom, Charles Leiberman, Edward Hershenhorn, David Weinstein, Wasserstrom & Chucas, and Pelino, Wasserstrom, Chucas & Monteverde, P.C.

Civ. A. No. 82–5051.

United States District Court, E.D. Pennsylvania.

May 26, 1983.

As Amended July 22, 1983.

Michael Needle, David Zlotnick, Lawrence Feldman, Philadelphia, Pa., for plaintiffs.

Wilbur Greenberg, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiffs Martin Eisenberg ("Eisenberg") and Arthur Nissen ("Nissen") bring this action assertedly on behalf of themselves and a class of purchasers of securities in three limited partnerships. This court has not ruled on the class action motion, but will presently rule on numerous motions by several defendants regarding the amended complaint. Defendant David Weinstein ("Weinstein") has filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure as well as a Motion to Strike or For a More Definite Statement under Rule 12(e) of the Federal Rules of Civil Procedure. He has also filed

a motion to dismiss the class action allegations.

Defendants David E. Wasserstrom ("Wasserstrom"), Wasserstrom & Chucas ("W & C") and Pelino, Wasserstrom, Chucas, & Monteverde, P.C. ("P,W,C, & M") have filed motions under Rules 8(a), 9(b) and 12 of the Federal Rules of Civil Procedure seeking to dismiss the complaint or, in the alternative, seeking to obtain a more definite statement.

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff would prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). Bearing in mind this stringent standard, we turn to the arguments.

The plaintiffs contend that from late 1975 or early 1976 through the present "defendants Gagnon, Boyers and Wasserstrom devised and implemented a scheme to place virtually worthless coal rights in a tract in West Virginia known as the Beury Estates into Ark, Bar and Cay Limited Partnerships...." (Amended Complaint, ¶ 21.) The plaintiffs further allege that "[a]s part of this scheme, Gagnon, Boyers and Wasserstrom recruited three individuals, defendants Leiberman, Hershenhorn and Weinstein, to act as general partners for Ark, Bar and Cay, respectively, and those persons agreed to and in fact did hold themselves out to investors ... as the general partners of Ark, Bar and Cay...." (Amended Complaint, ¶ 24.) The plaintiffs further allege that "Lieberman [sic], Hershenhorn and Weinstein misrepresented that they were the actual organizers and managers of those partnerships, whereas none of them played an operational role, if any, in the formation or operation of Ark, Bar, and Cay and each was at all times little more than an agent and mouthpiece for defendants Wasserstrom, Gagnon, and Boyers." (Amended Complaint, ¶ 24.)

Further, the complaint alleges that "Defendants Wasserstrom, Gagnon, and Boyers composed offering memoranda covering the sale of the securities in the form of limited partnership interests in Ark, Bar and Cay and circulated these memoranda under the names of Leiberman, Hershenhorn, and Weinstein." (Amended Complaint, ¶ 27.) The memoranda allegedly contained several "misleading" or misrepresentative statements. The plaintiffs also contend that defendants Gagnon, Boyers, and Wasserstrom "concealed the fact that Leiberman, Hershenhorn and Weinstein were acting as 'fronts' for [them]." (Amended Complaint ¶ 29c.)

The plaintiffs aver that as purchasers of limited partnership shares, they "have been subjected within the last year to expensive and protracted disputes with the IRS leading to liability for large tax payments and the expenditure of a great deal of time and money on legal and tax counsel to defend against the IRS" as a result of the "foregoing scheme." (Amended Complaint, ¶ 33.) They contend that they "had no reason to suspect wrongdoing until the results of an IRS investigation into Ark, Bar and Cay became known to them in late 1981 or early 1982 and had no reason to suspect that a fraud had been committed until the completion of the investigation conducted by plaintiffs' counsel." (Amended Complaint, ¶ 34.)

The plaintiffs have brought this action under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 as well as under Section 4 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, in Count III of their amended complaint.[1] They have also included a number of Pennsylvania common law allegations pursuant to this court's pendent jurisdiction.

## I. THE RICO CLAIM

■ Defendant Weinstein[2] attacks just the plaintiffs' RICO claim. Initially he con-

---

1. There appears to be no Count II in the amended complaint.

2. The plaintiffs have responded to Weinstein's motion as though it included Leiberman. Although Leiberman is mentioned in Weinstein's

tends that the activity complained of does not fall within the ambit of RICO, not because RICO is limited to members of organized crime, but because "the Act should be limited to activities which fall within the penumbra of activities engaged in by 'organized crime.'" (Motion of Defendant David Weinstein, p. 9.) The plaintiffs have alleged that the defendants "knowingly and willfully transmitted and caused to be transmitted through the mails numerous materials ... in furtherance of their scheme to defraud in violation of 18 U.S.C. § 1341" and "have transmitted sounds and other information by wire communication in interstate commerce in the course of executing the fraudulent scheme ... in violation of 18 U.S.C. § 1343." (Amended Complaint, ¶ 42(b), (c).) They allege that the "Defendants knowingly conducted and participated in the conduct of the affairs of Ark, Bar and Cay through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c)." (Amended Complaint, ¶ 43.) They have stated that "Ark, Bar and Cay are enterprises within the meaning of 18 U.S.C. § 1961(4)" (Amended Complaint, ¶ 41) and that "Defendants conspired to conduct the affairs of Ark, Bar and Cay through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d)." (Amended Complaint, ¶ 44.)

Defendant Weinstein argues that RICO was not designed as an alternative or cumulative remedy for private plaintiffs alleging securities fraud and thus it "should be applied conservatively beyond organized crime." (Motion of David Weinstein, p. 9). However, the allegations of mail fraud and wire fraud are within the activities defined by the RICO statute as "racketeering activities." 18 U.S.C. § 1961(1). "In determining the scope of a statute, we look just to its language. If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (interpreting the RICO

statute), quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Defendant points to no legislative history directing this court to do as he asks. Therefore, because the complained of activity falls within the unambiguous language of the statute, defendant's argument must be rejected.

In so holding this court is aware that other courts have attempted to limit the application of the RICO statute by finding that its intended scope was to reach "'organized crime' or activities within the penumbra of that phrase." *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 747 (N.D.Ill.1981); *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109 (S.D.N.Y.1975). Such an application does not necessarily avoid the potential constitutional problems that Congress attempted to avoid in its wording of the statute. 116 Cong.Rec. § 5343 (Oct. 7, 1970). This court's concern with using an intuitive response to the question of what is or is not "organized crime" causes us to reject the attempt to so limit the application of the statute. The recently filed opinion of *Schacht v. Brown,* 711 F.2d 1343 (7th Cir. 1983) supports this court's reading of the RICO statute as does the thorough Memorandum Opinion and Order recently filed in this court, *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983).

Defendant Weinstein next contends that the plaintiffs failed to properly allege "a pattern of racketeering activity." The argument is actually directed at the specificity with which the plaintiffs have pleaded the alleged fraud. Rule 9(b) of the Federal Rules of Civil Procedure states that "in all averments of fraud or mistake, circumstances constituting fraud or mistake shall be stated with particularity." Although the plaintiffs have set forth a fairly detailed account of the persons whom they believe participated in the alleged scheme to defraud, other than the approximate

brief, the motion itself does not include Leiberman's name nor does Weinstein's attorney purport to represent Leiberman in the motion pa-

pers. Therefore, the motion will be treated as Weinstein's alone.

dates given as to the initiation of the scheme ("late 1975 or early 1976," Amended Complaint, ¶ 21), the complaint contains no dates as to when the mailings of the allegedly fraudulent offering memoranda occurred. The plaintiffs also assert that fraudulent information was communicated by wire but fail to allege when such communications occurred, the content of the communications, or who made them. The defendant cannot respond to the conclusory allegations set forth in paragraphs 42(b) and (c) of the Amended Complaint. The plaintiffs will be required to plead with greater specificity both as to the mail and wire fraud allegations.

■ Defendant Weinstein further contends that the plaintiffs failed to properly allege that there was a pattern of racketeering activity. However, repeated acts of mail fraud or wire fraud would constitute a pattern of racketeering activity under the statute and the plaintiffs have alleged at least that much. 18 U.S.C. § 1961(5).

■ Finally, in connection with the RICO claim, defendant Weinstein contends that "[p]laintiffs have not alleged any specific activity on the part of Weinstein which would connect him to the alleged scheme of Gagnon, Boyers and Wasserstrom." (Motion of David Weinstein, p. 11.) This assertion is directed toward the conspiracy allegations. A fair reading of the "Operative Facts" section of the Amended Complaint (¶¶ 21–34) reveals fairly specific allegations as to the scheme and Weinstein's alleged connection to it.

■ Before reaching defendant Weinstein's motion regarding the Securities Act allegations, we shall turn to defendants Wasserstrom, W & C, and P, W, C, & M's RICO motions. They contend that RICO is to be applied to alleged involvement of organized crime. This circuit has taken the view that in criminal cases "the Government need not prove that a RICO defendant is a member of 'organized crime.'" *United States v. Vignola,* 464 F.Supp. 1091, 1096 (E.D.Pa.), *aff'd mem.,* 605 F.2d 1199 (3d Cir.1979), *cert. denied* 444 U.S. 1072, 100 S.Ct. 1015, 62 L.Ed.2d 753 (1980). *See also United States v. Forsythe,* 560 F.2d 1127 (3d

Cir.1977). The elements of the offense or claim under RICO are the same whether the case is civil or criminal. *Eaby v. Richmond,* 561 F.Supp. 131 (E.D.Pa.1983). The defendants' first argument, then, must be rejected in accordance with the precedent in this circuit.

■ The defendants next argue that the complaint fails adequately to allege a causal link between the plaintiffs' injuries and a violation of 18 U.S.C. § 1962. The defendants argue that the civil remedies provision, 18 U.S.C. § 1964(c), is not triggered simply by an injury resulting from racketeering activity. *Erlbaum v. Erlbaum,* CCH Fed. Sec.L.Rep. ¶ 98, 772 (E.D.Pa.1982). Of the unlawful activities set forth in Section 1962, two of them have been alleged by the plaintiffs:

> (c) conducting or participating in an enterprise's affairs through a pattern of racketeering activity;

> · · · · ·

> (d) conspiring to violate any of the substantive provisions of the statute.

*See* Blakey & Gettings, *Racketeer Influenced and Corrupt Organizations (RICO): Basic Concepts—Criminal and Civil Remedies,* 53 Temp.L.Q. 1009, 1021–1022 (1980). The allegations by the plaintiffs essentially are that Ark, Bar, and Cay were created by the defendants to be used as a means of defrauding the plaintiffs. The allegations that Ark, Bar and Cay are enterprises and that the defendants conducted the enterprises' affairs through a pattern of racketeering activities, i.e. mail and wire fraud, which conduct injured the plaintiffs, sufficiently sets forth the elements of a RICO claim including the necessary causation. "RICO prohibits persons from utilizing a 'pattern of racketeering activity' to conduct the affairs of, or maintain an interest in, an 'interstate enterprise.'" Comment, *Reading the "Enterprise" Element Back Into RICO Sections 1962 and 1964(c),* 76 N.W.L. Rev. 100, 104 (1981) (footnotes omitted). Although the defendants argue that "something more than an injury stemming from racketeering activity must be alleged" citing *Erlbaum v. Erlbaum, supra,* it has not

been made clear either by the defendants or the cases so requiring it what that "something more" would be. *See Erlbaum, supra; Harper v. New Japan Securities International, Inc.,* 545 F.Supp. 1002 (C.D.Cal. 1982); *Landmark Savings & Loan v. Rhoades, Hornblower & Co.,* 527 F.Supp. 206 (E.D.Mich.1981). The complaint sufficiently sets forth the causal connection required by the plain language of the statute.

■ The defendants next contend that the plaintiffs have impermissibly equated the "enterprise" with the "pattern of racketeering activity" alleged in the complaint. The term "enterprise" is defined in 18 U.S.C. § 1961(4) as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The plaintiffs contend that Ark, Bar and Cay are limited partnerships in ¶¶ 1 and 23 of the Amended Complaint. This would satisfy the definition of the term "enterprise." *See Engl v. Berg,* 511 F.Supp. 1146, 1154–1155 (E.D.Pa.1981) (limited partnership as enterprise). The plaintiffs further contend that each of the "Defendants knowingly conducted and participated in the conduct of the affairs of Ark, Bar and Cay through the pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c)." (Amended Complaint, ¶ 43.) Thus, plaintiffs contend that the affairs of Ark, Bar and Cay were conducted through the type of behavior proscribed by the RICO statute.

■ The defendants rely on *U.S. v. Turkette, supra,* for the proposition that the element of "enterprise" and the element of a "pattern of racketeering activity" must be separately proven by the plaintiff. In that regard the Court stated:

In order to secure a conviction under RICO, the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.' The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. 18 U.S.C.

§ 1961(1) (1976 ed., Supp. III). The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. *United States v. Turkette,* 452 U.S. at 583, 101 S.Ct. at 2528.

The amended complaint sufficiently alleges both the fact of an ongoing organization and the separate racketeering acts. If the operative facts were read without the mail and wire fraud allegations, there would still be an allegation of separate structures known as Ark, Bar and Cay. *See U.S. v. Lemm,* 680 F.2d 1193, 1201 (8th Cir.1982). *See also Bennett v. Berg,* 685 F.2d 1053, 1060 (8th Cir.1982) ("[d]iscrete existence, rather than legality or illegality of the enterprise's activities or goals, is the test").

■ The defendants also argue that the complaint fails to allege the infiltration of any legitimate business through a pattern of racketeering. The Supreme Court in *U.S. v. Turkette* determined that, "[o]n its face, the definition [of enterprise] appears to include both legitimate and illegitimate enterprises within its scope." 452 U.S. at 580, 101 S.Ct. at 2527. After a review of the legislative history, the court concluded that this interpretation was correct. 452 U.S. at 593, 101 S.Ct. at 2533–2534. The defendants' argument cannot stand in light of *Turkette.*

■ Finally, defendants Wasserstrom, W & C, and P, W, C & M, contend that the RICO claim is barred by the statute of limitations. It is defendants' argument that the three year statute of limitations set forth in Section 504 of the Pennsylvania Securities Act, 70 Pa.C.S.A. § 1–504 applies. The plaintiffs contend that the six year statute of limitations applicable to common law fraud applies. Neither plaintiffs nor defendants cite any cases to support their arguments. The RICO claim is based not solely on securities fraud but mail and wire fraud as well. With the view that "RICO creates a new legal wrong, for

which 'the closest analogy is to an action in tort,' *NSC Intern Corp. v. Ryan,* 531 F.Supp. 362, 363 (W.D.Ill.1981) (legal right to jury trial)," Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg,* 58 Notre Dame L.R. 237, n. 151 (1982), this court must determine the appropriate limitations period in the absence of statutory command.

As a general rule, where a federal statute does not contain a statute of limitations, the period of limitations to be applied is that applicable to the most similar state cause of action. *Board of Regents v. Tomanio,* 446 U.S. 478, 483–484, 100 S.Ct. 1790, 1794–1795, 64 L.Ed.2d 440 (1980) (citing *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) and the cases cited therein). "[C]onsiderations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action under consideration." *Johnson v. Railway Express Agency,* 421 U.S. at 465, 95 S.Ct. at 1722.

In a case applying the Pennsylvania limitation period [3] to the RICO statute, a court in this circuit has applied the six year period pursuant to the theory of common law fraud. In *D'Iorio v. Adonizio,* 554 F.Supp. 222, 227, 232 (M.D.Pa.1982), the court determined that "[t]he jurisdictional underpinnings of this case require pleading and proof of federal mail and wire fraud, both of which depend upon the existence of a scheme or artifice to defraud." Although in the case *sub judice* the plaintiffs also rely on securities fraud, the RICO count is capable of being sustained, if the averments are proven, solely on the mail and wire fraud allegations. In light of Congress' intent to have the RICO statute liberally construed to effectuate its remedial purposes, Section 904(a) of RICO, 84 Stat. 947, this court will apply the longer limitation period.[4]

In many cases the affirmative defense of a statute of limitations is most properly determined in a motion for summary judgment because it requires consideration of evidence outside the pleadings. The defense may be raised by a motion to dismiss under Fed.R.Civ.P. 12(b)(6) if the time alleged in the complaint shows clearly that the cause of action has not been brought within the statute of limitations. *Demetrius v. Marsh,* 560 F.Supp. 1157 (E.D.Pa.1983) (citing *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978). In the case *sub judice* the complaint does not satisfy the exception which would permit disposition pursuant to a 12(b)(6) motion. Once discovery has shed light on the issue, the parties may make the appropriate motions to this court with regard to the statute of limitations issue.

## II. THE SECURITIES CLAIM

Having resolved the issues raised by the defendants on the RICO claim, the court will now turn to their motions concerning the securities claim. Defendant Weinstein asserts initially that the plaintiffs have failed to state a cause of action under the securities laws and regulations. As stated earlier, plaintiffs' amended complaint is brought pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated by the Securities and Exchange Commission ("SEC").

Section 10(b) provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contri-

---

**3.** Both parties assume that Pennsylvania law applies. Neither party has argued any relevant West Virginia state law. This court will assume Pennsylvania law is appropriate in light of the fact that there is a significant relationship with Pennsylvania.

**4.** See text on page 1357 of this memorandum opinion regarding possible application of a two-year limitation period.

vance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

June 6, 1934, c. 404, Title I, § 10, 48 Stat. 891.

Rule 10b–5 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1978).

Weinstein contends that the amended complaint does not sufficiently allege any acts which can be construed as being "in connection with the purchase or sale" of securities. The plaintiffs essentially claim that they made purchases of limited partnership interests in Ark, Bar and Cay and, in connection with the sale of such purchases, the defendants made misrepresentations of material facts and omissions of material facts. The plaintiffs further allege that they relied on those misrepresentations and omissions, all of which allegedly violated the securities laws, and were thereby harmed. The amended complaint could not more clearly allege that the fraudulent misrepresentations were "in connection with" the sale of securities especially in light of the principle that the "connection" requirement may be broadly construed. *Superintendent of Insurance v. Bankers Life & Casualty Co.*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971).

Weinstein next appears to contend that the plaintiffs have stated merely a corporate mismanagement claim rather than a federal securities claim. The allegations set forth what the plaintiffs contend was a scheme to defraud purchasers of the limited partnership interests. They allege that the scheme has been carried out from the beginning of the operation and that it was a scheme to defraud purchasers of the securities. (Amended Complaint, ¶¶ 21, 27.) A claim of fraud and fiduciary breach "states a cause of action under any part of Rule 10b–5 only if the conduct alleged can fairly be viewed as 'manipulative or deceptive' within the meaning of the statute." *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 473–474, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1977). If the allegations are accepted as true, as they must be in this motion to dismiss, the ongoing transactions were at least deceptive. "When there is a sale of a security and fraud 'touches' the sale, there is redress under Section 10(b)." *Arrington v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 651 F.2d 615, 619 (9th Cir.1981). The allegations certainly set forth more than corporate mismanagement.

Defendant Weinstein also contends that the complaint is fatally defective because it makes no reference as to when the limited partnerships were created and when the plaintiffs made their investments. According to defendant Weinstein, it also fails to allege that any facts were misrepresented before or at the time that plaintiffs made their investments. The amended complaint does, in fact, set out the approximate time period when the limited partnerships were created and that the misrepresentations were made in the offering memoranda covering the sale of the securities and that the plaintiffs relied on those misrepresentations in purchasing securities in the limited partnerships. (Amended Complaint, ¶¶ 21, 27, 37.) The complaint does not, however, state when either Eisenberg or Nissen purchased their securities. That information has subsequently been provided to the defendants as a result of an order by this court during the pre-trial conference on February 15, 1983. The defendants are

therefore no longer left guessing as to when the securities were purchased. The plaintiffs' attorney has stated the purchases were made on December 21, 1976. (Letter of David B. Zlotnick, Esquire to the court, February 18, 1983.) The requirement of specific fraud allegations is "designed to ensure that the allegations are concrete enough to give notice to the defendants and to enable them to frame an answer and to prevent injury to reputation from cavalier allegations of fraud." *Clinton Hudson & Sons v. Lehigh Valley Cooperative Farms, Inc.*, 73 F.R.D. 420, 424 (E.D.Pa.1977), *aff'd mem.*, 586 F.2d 834 (3d Cir.1978). The defendants are now capable of framing an answer.

Weinstein next attacks the complaint by stating that it does not properly allege "a real or substantial connection between the alleged wrongdoing and use by the defendants of the mails or instrumentalities of interstate commerce." (Motion of Defendant Weinstein, p. 19.) The language of the statute does not require a "real or substantial connection," only that the use or employment of a manipulative device be made "by the use of any means or instrumentality of interstate commerce or of the mails." Section 10(b) of the Securities Exchange Act of 1934. The plaintiffs have alleged that "[t]he fraud ... was perpetrated in large measure by means of the mails and telephone." (Amended Complaint, ¶ 4.) At this juncture, that allegation in conjunction with allegations that various memoranda and legal opinions were issued and presumedly mailed sufficiently withstands the motion to dismiss.

Defendant Weinstein further contends that the complaint is insufficient because it fails to allege his status, his duty to the plaintiffs and his involvement. This court cannot help but wonder whether or not the defendant has read the entire amended complaint. As to his status and his involvement, the court directs defendant Weinstein's attention to the amended complaint at paragraphs 12, 24, 27, 30, 32 as examples of the allegations asserted directly toward him. As to the lack of an allegation of duty, suffice it to say that Section 10(b) and Rule 10b–5 create the duty allegedly breached by defendant Weinstein. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 152, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972).

Defendant Weinstein repeats his contention that the amended complaint does not satisfy Fed.R.Civ.Pro. 9(b). This court simply does not agree with his contention. The complaint details the alleged fraud sufficiently with regard to the securities claim.

Finally, defendant Weinstein attacks plaintiffs' standing to assert their claims. He seems to read the complaint as an assertion that plaintiffs are suing on behalf of Ark, Bar and Cay. This is not a derivative action. The court respectfully suggests that the defendant review the amended complaint.

The court must now turn to the other moving defendants' motions with regard to the securities claim. It is their initial argument that the claim is time-barred by the statute of limitations set out in the Pennsylvania Securities Act ("PSA"), 70 Pa.Stat.Ann. § 1–504.[5] Plaintiffs contend, on the other hand, that Pennsylvania's[6] six year statute of limitations for common law fraud is applicable.[7] Although

---

5. The statute provides:

(a) No action shall be maintained to enforce any liability created under section 501[1] (or section 503[2] in so far as it relates to that section) unless brought before the expiration of three years after the act or transaction constituting the violation or the expiration of one year after the plaintiff receives actual notice or upon the exercise of reasonable diligence should have known of the facts constituting the violation, whichever shall first expire.

6. See footnote 3, *supra*, as to the potential choice-of-law issue.

7. The statute provides:

The following actions and proceedings must be commenced within six years:

(6) Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation). 1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978. As amended 1980, Dec. 5, P.L. 1104, No. 189, § 5, imd. effective.

this court will resolve the issue as to which limitations period is to be applied, we decline at the present time to rule on the question as to whether or not the claim is time-barred. This is based on both the earlier determination that the complaint does not lend itself to such a ruling on this 12(b)(6) motion, and on the fact that a cause of action under § 10(b) "accrues when the aggrieved party has either actual knowledge of the violation or notice of facts which in the exercise of due diligence, would have led to actual knowledge thereof." *Vigman v. Community National Bank & Trust Co.,* 635 F.2d 455, 459 (5th Cir. 1981). A determination as to "due diligence" is inappropriate even in a summary judgment motion where conflicting inferences can be drawn from the facts. *Fickinger v. C.I. Planning Corp.,* 556 F.Supp. 434, 439 (E.D.Pa.1982) (citing *Buder v. Merrill Lynch, Pierce, Fenner & Smith,* 644 F.2d 690 (8th Cir.1981); *Robertson v. Seidman & Seidman,* 609 F.2d 583, 591 (2d Cir.1979)).

 We turn to the question of which statute of limitations is applicable. The Court of Appeals for the Third Circuit has considered when to apply the securities act limitation set out by Pennsylvania state law. In *Biggans v. Bache Halsey Stuart Shields, Inc.,* 638 F.2d 605 (3d Cir.1980), the court held that "[w]here the state Blue Sky law does not provide the plaintiff with a cause of action for the relief requested, but common law does, and where the state legislature framed its statute to supplement, rather than supplant, available common law remedies, it is the common law limitations period which must be applied in federal securities actions." *Id.* at 610. The *Biggans'* holding requires this court to first determine whether or not this action could have been brought under the State Blue Sky laws. That law "grants a private rem-

edy to a buyer only against his seller." *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 192 (3d Cir.1981) *cert. denied* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982) (interpreting *Biggans*). The complaint asserts that "Defendants sold securities to plaintiffs...." (Amended Complaint, ¶ 36.) However, at least as to allegations against Leiberman, Weinstein, and Edward Hershenhorn, the factual allegations are such that they could not possibly have been sellers. The amended complaint states that "each was at all times little more than an agent and mouthpiece for defendants Wasserstrom, Gagnon and Boyers." (Amended Complaint, ¶ 24.) A careful reading of the amended complaint leads this court to conclude that the sellers of the securities were defendants Wasserstrom, Bernard A. Boyers, and Frederick A. Gagnon. As to them, the limitations period under the Pennsylvania securities statute applies.[8]

The remaining moving defendants, W & C and P, W, C & M, as non-seller defendants, are subject to the Pennsylvania common law fraud statute of limitations. There is some doubt as to whether or not the six year limitation still applies in light of a change by the Pennsylvania legislature for actions commenced after June 27, 1978. One court in this district has applied the two year statute of limitations set out in 42 Pa.C.S.A. § 5524(3).[9] *Fickinger v. C.I. Planning Corp., supra.* While it is a well-reasoned opinion, the Court of Appeals in this circuit has yet to adopt the two year period. In *Biggans,* the court noted the possibility of its application but determined that the issue need not be decided under the facts of that case. *Biggans,* 638 F.2d at 607, n. 2. In *Sharp,* decided after *Biggans,* the circuit court simply applied the six year limitation without raising the possibility of

---

**8.** If discovery leads to the conclusion that they were not sellers, the court would apply the appropriate limitations period. Conversely, if W & C and P, W, C & M prove to be sellers, the court would apply the applicable limitations period.

**9.** 42 Pa.C.S.A. § 5524(3) provides:
 The following actions and proceedings must be commenced within two years:

(3) An action for taking, detaining or injuring personal property, including actions for specific recovery thereof.

1976, July 9, P.L. 586, No. 142, § 2, effective June 27, 1978.

applying the two year limit. *Sharp,* 649 F.2d at 192. Because the latest mandate by this circuit appears to require application of a six year limitation under appropriate circumstances, this court will continue to do so. As to W & C and P, W, C & M, then, a six year statute of limitation period applies.

The remaining contention by Wasserstrom, W & C and P, W, C & M is that the complaint fails to adequately allege fraud. This matter was dealt with earlier in the opinion. The complaint provides adequate notice of the fraud pursuant to a securities claim and, other than requiring greater specificity as to the mail and wire frauds, the plaintiffs need not amend the remaining part of the amended complaint.

Because this court has not dismissed the claims arising under federal law, and the state law claims arise out of the same nucleus of operative facts, the court will deny the defendants' motion to dismiss the state law claims.