James H. JOSEPH and Barbara S. Joseph, Plaintiffs,

v.

ALGEMENE BANK NEDERLAND, N.V., Jan Soels and Megatol, Inc., Defendants.

Civ. A. No. 83–2281.

United States District Court, W.D. Pennsylvania.

March 29, 1984.

James H. Joseph, Pittsburgh, Pa., for plaintiffs.

James D. Morton, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for Algemene Bank Nederland.

Stanley W. Greenfield, Greenfield & Murtagh, Pittsburgh, Pa., for Jan Soels and Megatol, Inc.

## OPINION

COHILL, District Judge.

Presently before the Court is Defendant Algemene Bank Nederland's Motion to Dismiss the Complaint. Defendants Soels and Megatol have joined Algemene Bank Nederland's motion.

### I. *The Complaint*

The Complaint in this case is comprised of seven counts, three of which allege violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, ("RICO"). The three defendants are 1) Algemene Bank Nederland ("ABN"), 2) an ABN loan officer, Jan Soels, and 3) Megatol, a Swiss company in which Soels allegedly either had an interest or controlled.

Count I is captioned "First Count By the Plaintiffs Against the Defendants Stating Claims Under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(b)." This count of the complaint identifies the parties (¶¶ 1–4), the jurisdictional basis (¶¶ 5–6), and contains a highly detailed factually-specific narrative of the alleged events which form the basis of the complaint (¶¶ 7–74).

Count 2 is captioned "Second Count ... Stating Claims Under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a)" (¶ 75). This count alleges no new facts, but incorporates the averments of paragraphs 1–74.

Count 3 is captioned "Third Count ... Stating Claims Under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d)" (¶¶ 76–77). These paragraphs incorporate the averments made in paragraphs 1–74 and allege, in addition, that "[b]y virtue of the premises, ABN, Soels and Megatol conspired with one another, and with other persons, including agents, servants and employees of ABN and customers of ABN, in the foregoing pattern of racketeering activity and racketeering enterprise" (Complaint, ¶ 77).

Count 4 is captioned "Fourth Count Stating Claims for Civil Conspiracy." (¶¶ 78–80). This count incorporates the averments of paragraphs 1–73, alleges that defendants acted in bad faith and with malice, and demands actual and exemplary damages, costs and attorneys' fees.

Count 5 is captioned "Fifth Count ... Stating Claims for Tortious Interference with Contractual and Proespective Contractual Relationships" (¶¶ 81–82). Paragraph 81 incorporates the averments of paragraphs 1–73, 79 and 80, and asserts that no defendant had any absolute or qualified privilege with respect to any conduct alleged.

Count 6 is titled "Sixth Count ... Stating Claims for Failing to Deal in Good Faith" (¶ 83), and incorporates the averments of paragraphs 1–73, 79 and 80.

Count 7 is captioned "Seventh Count ... For Breach of Fiduciary Duties Arising Out of a Joint Venture." (¶ 84–85). These paragraphs incorporate the averments of paragraphs 1–73, 79 and 80, and allege that the relationship among plaintiffs, defendants and others was in the nature of joint adventurers.

### II. *Factual Background*

The facts alleged in this case may be summarized as follows. In February 1981, plaintiffs and one Daniel Mushegian entered into an unwritten agreement to buy, as partners, a Westmoreland County, Pennsylvania newspaper, the News Dispatch. A condition of the agreement was that Joseph and Mushegian obtain the neces-

sary financing. Joseph contacted one Murray Litmans, an attorney who represented Algemene Nederland Bank ("ABN"), and asked whether ABN was interested in participating in the acquisition. Litmans allegedly arranged a meeting on February 9, 1981 between Joseph, Litmans, and Jan Soels, a lending officer at ABN; at the meeting, ABN, through Litmans and Soels, agreed to lend Joseph $250,000. Two corporations, Seramark Holdings U.S.A., and News-Dispatch Publishing Co. ("NDPC") were formed for purposes of the acquisition: NDPC held the personal property, goodwill, contract and circulation rights of the newspaper. Joseph and Mushegian each owned 50% of the stock with Joseph acting as President, and Mushegian as Secretary-Treasurer. An assistant publisher, Robert Hyman, was hired in February, and, as part of his employment contract, was to receive 20% of the stock of NDPC on September 1, 1981.

The complaint, covering a chronological period from approximately February 1981 until the end of 1981, alleges acts by defendants which may be best understood in two "stages": 1) the extortion from plaintiffs of a "fee" for the ABN loan, in the form of a grant of interest in NDPC, which was allegedly transferred to Megatol, a Swiss company in which Soels, the ABN loan officer, either had an interest or controlled; and 2) the participation in a course of conduct, using additional financing as leverage, to assist Mushegian in a takeover bid for NDPC.

Paragraph 61 of the Complaint alleges that:

Mushegian and Soels had agreed that Soels and/or Megatol would receive a substantial increase in his, its or their interest in News-Dispatch Publishing Company upon Joseph abandoning the newspaper venture in favor of Mushegian. Soels undertook to loan, or arrange a loan through other persons and institutions, of the amount being sought by Joseph and Mushegian for News-Dispatch Publishing Company and for the acquisition of the two additional newspapers, but only upon the condition of the Josephs' shares being available to Soels and/or Megatol.

(Complaint, ¶ 61).

When the bid failed, defendants allegedly called in the loan, guaranteed by plaintiff and his wife, as punishment for plaintiff Joseph opposing the takeover bid.

As has been summarized, the Complaint alleges that defendants obtained agreements from prospective borrowers of ABN, and specifically from plaintiffs, whereby payments were made to defendants as a price for providing credit. These payments took the form of interests in the borrowers' businesses. The Complaint alleged that "[i]n connection therewith, the Defendants utilized threats, fear and coercion in obtaining, maintaining and increasing or enhancing such interests in the businesses of ABN's borrowers." (Complaint, ¶ 69).

### III. *Discussion*

In evaluating a motion to dismiss, the allegations of the complaint and all reasonable inferences must be accepted as true and viewed in the light most favorable to the nonmoving party. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Kugler v. Helfant*, 421 U.S. 117, 125 n. 5, 95 S.Ct. 1524, 1531 n. 5, 44 L.Ed. 15 (1975); *Empire Abrasive Equipment Corp. v. H.H. Watson, Inc.*, 567 F.2d 554, 557 (3d Cir.1977); *Amanto v. Witlin*, 544 F.Supp. 140, 141 (E.D.Pa.1982). A complaint should not be dismissed unless it appears that plaintiff could prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. *The RICO Claims*

Defendants move to dismiss each of the three RICO claims set forth by plaintiff, namely, 18 U.S.C. §§ 1962(a), (b), and (d). We will first address defendants' arguments directed to §§ 1962(a) and (b).

1. *Section 1962(a) and (b)*

Section 1962(a) prohibits

The use or investment of income derived from a pattern of racketeering activity to acquire an interest in an enterprise affecting interstate or foreign commerce. (18 U.S.C. § 1962(a))

Section 1962(b) prohibits

The acquisition or maintenance, through a pattern of racketeering activity, of any interest in or control over an enterprise affecting interstate commerce (18 U.S.C. § 1962(b)).

Defendants first argue that plaintiffs have not established a "pattern of racketeering activity" as required by these sections. Section 1961(5) defines "pattern of racketeering activity" as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). "Racketeering activity" is defined by the statute to include specified federal and state offenses. 18 U.S.C. § 1961(1).

 Plaintiffs have alleged, as the predicate acts, violations of 18 U.S.C. §§ 894, 1951 and 1952. The Complaint alleges:

The conduct of the Defendants as aforesaid contravenes the provisions of 18 U.S.C. § 894, 1951 and 1952, and constitutes a pattern of racketeering activity and racketeering enterprise within the meaning of 18 U.S.C. 1961 *et seq.*

Complaint ¶ 71. Section 894 prohibits collection or attempted collection of credit by extortionate means. 18 U.S.C. § 894 (1976). The three elements of an offense under § 894 are 1) a collection or attempted collection; 2) the use of extortionate means; and 3) that the accused knowingly participated. *United States v. Benedetto,* 558 F.2d 171 (3d Cir.1977); 2 *Devitt & Blackmar,* at § 5713. The complaint alleges that Soels and Litmans, on behalf of ABN, participated in the takeover attempt of the News-Dispatch by Mushegian, and called in the loan made to the newspaper to punish Joseph for refusing to cede control to Mushegian. These actions are alleged to have occurred from August 5, 1981 until about August 25, 1981 (Complaint, ¶¶ 51–59). We feel these allegations are sufficient to state a claim as to a predicate act based on a violation of 18 U.S.C. § 894.

 Plaintiffs further allege as a predicate act a violation of 18 U.S.C. § 1951, which prohibits interference with commerce by threats or violence. The elements of a Hobbs Act offense are extortion and a nexus with interstate commerce. *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). "Extortion" is defined as "the obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). The complaint alleges that Attorney Litmans, representing ABN, between February 9 and 17, 1981, demanded a 10% interest in the newspaper venture from Josephs. The 10% figure was later reduced to 5%. Since the letter conveying the interest was to be transferred to Megatol, and since Litmans appeared to be representing both ABN and Soels (Complaint ¶ 20), we will allow the allegation to stand at this point with regard to all defendants. (Complaint ¶¶ 17–18). We believe these facts, taken as true, are sufficient to allege a predicate act based on a violation of 18 U.S.C. § 1951.

 Plaintiffs have also alleged a violation of 18 U.S.C. § 1952 ("The Travel Act."). A violation of the travel act occurs when a person travels in interstate commerce or uses any facility in interstate commerce to promote any unlawful activity as defined by the Act. This includes "extortion, bribery, or arson in violation of the laws of the State in which they are committed or of the United States." 18 U.S.C. § 1952(b)(2) (1976). The three elements necessary to constitute an offense under this section are 1) interstate travel or use of an interstate facility; 2) intent to promote an unlawful activity. *United States v. Wander,* 601 F.2d 1251, 1258 (3d Cir. 1979). Having reviewed the complaint, we

find no facts to support an allegation that any defendant may have violated § 1952, for the simple reason that none of the defendants are alleged to have engaged in interstate travel or to have used interstate facilities. We will, therefore, order this allegation stricken. In finding that two predicate acts of racketeering activity have been sufficiently alleged, we note that while it is not necessary that each RICO defendant have participated in all the alleged acts of racketeering activity, each defendant charged with a substantive RICO offense must ultimately be found to have participated in two qualifying acts. *See United States v. Peacock*, 654 F.2d 339 (5th Cir.1981).

■ Plaintiffs do not set forth in their complaint what they allege to be the "enterprise" in this case. In their supporting brief, however, plaintiffs state that with respect to § 1962(a), that

ABN (a "person") has received income from the loans made by Soels which would not have been made or collected except in connection with violations of the predicate statutes, and ABN has either "used" or "loaned" such income to other ABN borrowers (the plaintiffs), attendant to which the Defendants acquired interests in the borrowers' otherwise legitimate businesses (NDPC and Seramark).

(Plaintiffs' Brief in Opposition to Motion to Dismiss, at 36–37). While we find this theory somewhat elusive, plaintiffs have identified NDPC and Seramark as the "enterprise" for purposes of 1962(a) and (b).

RICO encompasses two kinds of enterprises: legal entities and "associations in fact." *United States v. Turkette*, 452 U.S. 576, 581–82, 101 S.Ct. 2524, 2527–28, 69 L.Ed.2d 246 (1981). "An enterprise is particularly likely to be found where ... the enterprise alleged is a legal entity rather than an 'associational enterprise,'" and courts have uniformly held that such entities are appropriately alleged as RICO "enterprises," generally posing no problem of separateness from predicate acts. *See Bennett v. Berg*, 685 F.2d 1053, 1060–61

(8th Cir.1982) (citing cases), *on reh'g*, 710 F.2d 1361 (8th Cir.), *cert. denied sub nom. Prudential Ins. Co. v. Bennett*, —— U.S. ——, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). While plaintiffs, in their brief, also identify possible "enterprises" with respect to § 1962(c), we find no count in the complaint alleging a violation of this section. Plaintiffs are free to amend the Complaint to include a count with respect to § 1962(c), but should they choose to do so, should clearly identify the alleged enterprise.

■ Finally, with respect to the elements of 1962(a) and (b), defendants argue that no nexus is alleged in plaintiffs' complaint between the racketeering activity and the enterprise. In *United States v. Provenzano*, 688 F.2d 194, (3d Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982), the Court of Appeals for the Third Circuit stated that "[i]t is only when the predicate acts are unrelated to the enterprise or the actor's association with it that the nexus element is missing, and consequently there is no RICO violation." *Id.* at 200. Here, we think the acts alleged clearly related to NDPC and Seramark as well as to the defendants' association with that enterprise. Under the standard set forth in *Conley v. Gibson, supra,* we feel plaintiffs have set forth facts sufficient to withstand a motion to dismiss as to § 1962(a) and (b).

## 2. *Connection with Organized Crime*

■ Defendants argue that the Complaint is defective in failing to allege that defendants were engaged in organized crime or were infiltrated by persons engaged in organized crime. While this view has garnered some judicial support, the overwhelming majority of courts have concluded that RICO was not intended to be, and should not be limited to, the context of organized crime. The language of the statute and its legislative history indicate no such limitation. *See Eisenberg v. Gagnon*, 564 F.Supp. 1347, 1351 (E.D.Pa.1983); *Kimmel v. Peterson*, 565 F.Supp. 476, 490–91 (E.D.Pa.1983) (citing cases and setting forth legislative history).

### 3. *RICO Injury*

Defendants also argue that the Complaint fails for failure to set forth a "RICO injury," i.e., "something more or different than injury from predicate acts..." *See Landmark Savings & Loan v. Loeb Rhoades, Hornblower & Co.*, 527 F.Supp. 206, 208 (E.D.Mich.1981). According to this reasoning, a plaintiff must allege not only an injury arising from the predicate offenses, but also must allege an injury from the "racketeering enterprise." *See e.g. Landmark, supra; see also Waste Recovery Corp. v. Mahler*, 566 F.Supp. 1466 (S.D.N.Y.1983); *Harper v. New Japan Securities Int'l, Inc.*, 545 F.Supp. 1002 (C.D. Cal.1982); *Van Schaick v. Church of Scientology*, 535 F.Supp. 1125 (D.Mass. 1982).

Section 1964(c) provides simply: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore ... and shall recover threefold the damages he sustains...." 18 U.S.C. § 1964(c) (1976).

 It has been noted, and we agree, that the concept of "enterprise injury," like that of the "organized crime" link previously discussed, is an artificial barrier, created by the courts, and not warranted by the language, purpose, or history of the statute.

> The requirement of a commercial or competitive injury, like the necessity of proving a link to organized crime, may be reflective of judicial discomfort with the broad sweep of RICO. Indeed, the statute federalizes many state offenses and provides supplemental remedies in areas where remedies already exist. The *Harper* court expressed this sentiment by noting that "[i]t is simply incomprehensible that a plaintiff suing under the securities laws would receive one-third the damages of a plaintiff suing under RICO for the same injury." 545 F.Supp. at 1007–08. Although a valid concern, it is one which is within the province of Congress. It is not the place of the judiciary to narrow a purposely broad statute. As Professor Blakey commented, "the blunt

truth is that some lower courts have been more intent on redrafting than reading RICO."

*Kimmel v. Peterson*, 565 F.Supp. 476, 493 n. 21 (E.D.Pa.1983) (quoting Blakey, The RICO Civil Fraud Action in Context: Reflections on *Bennett v. Berg*, 58 Notre Dame L.Rev. 237, 249–80 (1982)). We follow the reasoning of Judge Giles in concluding that the statute does not require special standing or "RICO injury." *See Kimmel, supra*, at 493–95. Similarly, we find defendant ABN's argument that plaintiffs are without standing because of their participation in the acts complained of to be without merit.

### 4. *The RICO Conspiracy Count*

 Defendants argue that plaintiffs have failed to adequately plead conspiracy to violate 1962(a) and (b). Section 1962(d) provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section.

18 U.S.C. § 1962(d). An agreement to commit a pattern of racketeering alone is insufficient in alleging and proving a RICO conspiracy, *United States v. Riccobene*, 709 F.2d 214, 224 (3d Cir.), *cert. denied, sub nom. Ciancaglini v. United States*, —— U.S. ——, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983), since the agreement must be to violate the substantive provisions of the Act. Here, we believe that plaintiff has adequately pleaded such a conspiracy. Plaintiffs allege a course of conduct in which payments in the form of interests in businesses were extracted as the price for extending loans. (Complaint, ¶¶ 17–18, 70). Plaintiffs also allege that Mushegian and Soels agreed that

> Soels and/or Megatol would receive a substantial increase in his, its or their interest in News-Dispatch Publishing Company upon Joseph abandoning the newspaper venture in favor of Mushegian. Soels undertook to loan, or arrange a loan through other persons and/or institutions, of the amount being sought by

Joseph and Mushegian for News-Dispatch Publishing Company and for the acquisition of the two additional newspapers, but only upon the condition of the Josephs' shares being available to Soels and or Megatol.

Given the possibility that the conspiracy may have included more participants than the three defendants, and given the impossibility, at this stage, of determining in what capacity defendant Soels was acting, we will allow plaintiffs claim under § 1962(d) to stand.

### B. *Other Claims*

*Tortious Interference with Contractual and Prospective Contractual Relationships and Civil Conspiracy*

 Counts Four and Five of the Complaint allege civil conspiracy and tortious interference with existing and prospective contractual relations. We will dismiss these counts for lack of standing. Under RICO, individual plaintiffs (who may be shareholders in a corporation) are granted standing to sue. Section 1964(c), *supra,* grants standing to "[any] person injured in his business or property by reason of a violation of section 1962..." Notably, "person" is defined as "includ[ing] any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

Fed.R.Civ.P. 17(a) provides, however, that "every action shall be prosecuted in the name of the real party in interest." In this case, with respect to Counts Four and Five, the real parties in interest are either Seramark Holdings, U.S.A. and/or News-Dispatch.

It is .well established that

[a]n action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation. The shareholder's rights are merely derivative and can be asserted only through the corporation. Although this rule does not apply in a case where the shareholder shows a violation of a duty owed directly to him, diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right.

*Stevens v. Lowder,* 643 F.2d 1078, 1080 (5th Cir.1981), *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3d Cir.1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); *See also In re Penn Central Securities Litigation,* 347 F.Supp. 1324 (E.D.Pa.1972). We believe that the injuries alleged in Paragraph 72 of the Complaint are injuries directly to the corporation. Every injury to a corporation necessarily harms its shareholders because of the loss of value of their interest in the corporation. Here the contracts allegedly interfered with were, presumably, contracts between the corporation and its managers; we do not know the parties to the prospective contracts. Under these circumstances, we do not believe plaintiffs have an independent cause of action, and we will dismiss Counts Four and Five.

*Failure to Deal in Good Faith and Breach of Fiduciary Duties Arising From a Joint Venture*

 Count Six, contained in paragraph 83, incorporates paragraphs 1–73, 79 and 80 of the Complaint. The caption charges that defendants failed to deal in good faith. Paragraph 79 simply states that defendants acted in bad faith and with malice, and Paragraph 80 is a claim for damages. We find that plaintiffs have failed to allege a cause of action in Count Six, and, therefore, will dismiss this count.

Count Seven charges that defendants breached their fiduciary duties as joint venturers. Count Seven, contained in paragraphs 84 and 85, incorporates paragraphs 1–73, 79 and 80 and states that the relationship of defendants, the Josephs and Daniel Mushegian was one of joint ventures. The elements of a joint venture in Pennsylvania are

1) a joint proprietary interest in, and a right to mutual control over, the enterprise;

2) a contribution by each of the parties of capital, materials, services or knowledge; and

3) a right to participate in the expected profits.

*Richardson v. Walsh Construction Co.,* 334 F.2d 334, 336 (3d Cir.1964) (*citing McRoberts v. Phelps,* 391 Pa. 591, 138 A.2d 439, 443–44 (1958)).

In Paragraphs 14 and 15 of the Complaint, plaintiffs state that "Joseph and Mushegian explained the contemplated acquisition to Soels and Attorney Litmans, and Soels, on behalf of ABN, agreed to loan the sum of $250,000 to Joseph and Mushegian to acquire the Newspaper." (Complaint, ¶ 14) (emphasis supplied). The complaint further states, "Joseph and Mushegian agreed that certain real estate owned by Norwin Newspapers, Inc. *would be purchased by them* through a general partnership...." (Complaint, ¶ 15) (emphasis supplied).

■ While the existence of a joint venture is a question of fact, what constitutes a joint venture is a question of law. We do not believe that a loan transaction for which an extortionate interest is allegedly later demanded and supplied constitutes an agreement by the plaintiffs and defendants to participate in a joint venture. Nor do we find, under the facts alleged, that defendants had any joint proprietary interest or right of mutual control. *See Beavers v. West Penn Power Co.,* 436 F.2d 869, 873 (3d Cir.1971) (reversing district court's charge to jury on elements of joint venture). A joint venture, as the phrase implies, is a voluntary agreement giving certain rights to mutual control. The "agreement" if it may be called that, giving defendants any right in the News-Dispatch, was, under the facts as alleged, anything but voluntary. We will dismiss Count Seven of the Complaint.