**PROFESSIONAL ASSETS MANAGEMENT, INC.,**
Plaintiff,

v.

**PENN SQUARE BANK, N.A., et al., Defendants.**

Nos. Civ–82–1357–A, Civ–83–69–A, Civ–83–1583–A, Civ–83–1596–A, Civ–83–3117–A, Civ–84–1663–A, Civ–84–1671–A, Civ–84–1672–A, Civ–84–1678–A, and Civ–84–1612–A.

United States District Court,
W.D. Oklahoma.

Aug. 30, 1985.

Stanley W. Levy, Ross Arbiter, Lyle R. Mink & K. Phillip Knierim, Barbara Brown, Mark S. Simonian, Gordon, Weinberg, Zipser, Los Angeles, Cal., Erwin E. Adler, Rogers & Wells, Patricia A. Beaman, Carol B. Sherman, Allan E. Ceran, Los Angeles, Cal., William Doyle, Jones, Givens, Gotcher, Doyle & Bogan, Inc., Tulsa, Okla., Gene A. Castleberry & Robert A. Wiener, Law Offices of Gene A. Castleberry, Oklahoma City, Okla., for plaintiff.

Stephen P. Friot, Spradling, Alpern, Friot & Gum, Oklahoma City, Okla., John W. Vardaman, Jr. and David D. Aufhauser, John K. Villa, Gerson A. Zweifach, Williams & Connolly, Washington, D.C., Peter B. Bradford, Bradford, Haswell, Jones, Oklahoma City, Okla., Jack G. Bush, Gary R. Underwood, Tulsa, Okla., Murray E. Abowitz, Abowitz & Welch, Oklahoma City, Okla., Robert C. Margo, George F. Short, S. Thomas Adler, Short, Barnes, Wiggins, Margo, Adler & Worten, Oklahoma City, Okla., Richard E. Comfort, Claire E. Barrett, Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okla., John C. Snodgrass & David T. Hedges, Jr., Vinson & Elkins, Houston, Tex., James E. Work, Shirk, Work, Robinson & Williams, Oklahoma City, Okla., J. William Conger & James C. Prince, Larry D. Hartzog, Hartzog, Conger & Cason, Oklahoma City, Okla., Earl D. Mills, John M. Perry III, Mills, Whitten, Mills & Mills, Oklahoma City, Okla., Charles C. Green, Turner, Turner, Green & Braun, Oklahoma City, Okla., Richard B. Talley, Talley, Perrine & Smith, Norman, Okla., James W. Bill Berry, James W. Bill Berry & Associates, Oklahoma City, Okla., Harold M. Durall, Oklahoma City, Okla., Reid E. Robison, John N. Hermes, McAfee & Taft, Oklahoma City, Okla., Stephen D. Powell, Kirk & Chaney, Oklahoma City, Okla., John N. Goodman, Oklahoma City, Okla., Burck Bailey, Warren F. Bickford IV, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okla., Charles C. Baker, Oliver S. Howard, Gable & Gotwals, Tulsa, Okla., Noma D. Gurich, Murray E. Abowitz, Abowitz & Welch, Oklahoma City, Okla., Andrew B. Weissman, Wilmer, Cutler & Pickering, Washington, D.C., Judson M. Fink, Oklahoma City, Okla., K. Phillip Knierim, Mark S. Simonian, Wood, Lucksinger & Epstein, Los Angeles, Cal., for defendants.

## ORDER

ALLEY, District Judge.

### Background

Plaintiff Professional Assets Management, Inc., has moved to vacate this Court's Order of November 26, 1984, which dismissed the civil RICO claims asserted under 18 U.S.C. § 1962 in PAM's Second Amended Complaint against defendant Peat, Marwick, Mitchell & Co. The Order of November 26 was based on PAM's failure to plead a separate racketeering injury. On July 1, 1985, in *Sedima, SPRL v. Imrex Co.*, —— U.S. ——, 105 S.Ct. at 3275, 87 L.Ed.2d 346 (1985), the Supreme Court held that a separate racketeering injury was not an element of civil RICO liability, and that violation of 18 U.S.C. § 1962(c), as alleged by PAM, consists of (1) the conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity. (*Sedima*, —— U.S. at ——, 105 S.Ct. at 3285). The Court notes in *Sedima* that "the questions whether the defendants committed the requisite predicate acts, and whether the commission of those acts fell into a pattern, are not before us." —— U.S. at ——, 105 S.Ct. at 3287. This court has not examined the pattern requirement under the faint light *Sedima* casts on it. (*See Rother v. LaRenovista Estates, Inc.*, No. 83–206–R (W.D.Okl. Aug. 7, 1985) at 2).

Apparently, though not explicitly, PAM advances its motion based on Federal Rule of Civil Procedure 60(b)(5) or (6), which authorizes relief from a judgment when "(5) a prior judgment upon which it is based has been reversed or otherwise vacated, or (6) it is no longer equitable that the judgment should have prospective application; or any other reason justifying relief from the operation of the judgment." In this Circuit, relief under Rule 60(b) because of a change in precedent is directed to the trial court's discretion and consideration in equity. *Pierce v. Cook & Co., Inc.*, 518 F.2d 720 (10th Cir.1975); *cert. den.* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89

(1976).[1] Peat opposes reinstatement of PAM's RICO claim on grounds that the allegations fail to establish a "pattern" of racketeering activity.

## Discussion
### RICO allegations in No. CIV-82-1357 and CIV-84-1663

■ As a matter of statutory definition (18 U.S.C. § 1961(5)), a "pattern" must be established by "at least two acts of racketeering activity." "To prove a pattern in a criminal RICO case, the government must establish two or more predicate offenses which are related to the activities of the enterprise." *U.S. v. Zang*, 703 F.2d 1186, 1194 (10th Cir.1982), *cert denied*, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983); *accord, U.S. v. Weinstein*, 762 F.2d 1522 (11th Cir.1985). Moreover, RICO does not apply to every pattern of racketeering activity; the gravamen of a RICO violation "is the *conduct of an enterprise through* a pattern of racketeering activity." *U.S. v. Phillips*, 664 F.2d 971, 1011 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982) (emphasis supplied).

■ Taken as a whole, PAM's allegations concerning Peat pertain to the accounting firm's preparation and issuance of the December 31, 1981, audit report on Penn Square Bank. Count 4 of PAM's second amended complaint asserts that Peat's engagement and audit report constituted fraud; Count 5 asserts that Peat's execution of the audit was negligent, and Count 7 incorporates the congeries of prior allegations into the following RICO claim:

---

1. A change in decisional law is not universally recognized as a basis for relief under Rule 60(b)(5). Some circuits hold that Rule 60(b)(5) "does not authorize relief from a judgment on ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another proceeding. 7 Moore's Federal Practice, par. 60.-26(3) at 325." *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645 (1st Cir. 1972). According to this view, Rule 60(b)(5) applies only when the prior judgment has direct res judicata or collateral estoppel implications. *Marshall v. Bd. of Education*, 575 F.2d 417, 425 (3d Cir.1978); *Coalition of Black Leadership v. Cianci, Jr.*, 570 F.2d 12 (1st Cir.1978); *Title v. U.S.*, 263 F.2d 28 (9th Cir.1959), *cert. den.* 359 U.S. 989, 79 S.Ct. 1118, 3 L.Ed.2d 978 (1959); *Berryhill v. U.S.*, 199 F.2d 217 (6th Cir.1952).

At one time the Tenth Circuit apparently applied this restriction to the grounds for Rule 60(b)(6) motions. In *Collins v. City of Wichita, Kansas*, 254 F.2d 837 (10th Cir.1958), the court denied relief under the Rule to landowners who had suffered an adverse judgment based on a statutory notice requirement later held unconstitutional by the Supreme Court. The court favored maintaining finality, so ". . . the fact that a court may have made a mistake in the law when entering judgment, or that there may have been a judicial change in the court's view of the law after its entry, does not justify setting it aside." 254 F.2d at 839.

Later, however, the Tenth Circuit decided *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975), *cert. denied* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976), which granted a 60(b)(6) motion where the state court decision underpinning this Court's decision in a diversity case was expressly overruled by the Oklahoma Supreme Court. Pierce has been criticized (note, 124 U.Pa.L.Rev. 843 (1976), but it is still the law of this Circuit, and it indicates that a change in relevant decisional law by this nation's highest tribunal *should be taken into account* under Rule 60(b). Other courts as well have held that "intervening and supervening Supreme Court decisions can often provide adequate justification" for relief under 60(b)(5) and 60(b)(6) (*EEOC v. Baltimore & Ohio Railroad Co.*, 557 F.Supp. 1112, 1116 (D.Md.1983), although still others have held that a change by the Supreme Court in law applicable to a previously entered judgment does not warrant Rule 60(b) relief. *McKnight v. U.S. Steel Corp.*, 726 F.2d 333, 336 (7th Cir.1984).

Vacating the November 26th Order does not run afoul of the interest in finality espoused in *Collins*, where the motion to vacate was based on a Supreme Court opinion in an entirely different case that issued more than a year after final judgment was entered by the district court in *Collins*. The instant suit has not reached judgment, and this Order concerning a pretrial motion will issue well in advance of trial. The post-judgment time span of several years, which concerned the court in *Pierce* and would concern this Court as well, is similarly absent. Moreover, the opportunity to revise the court's earlier decision with a recent and significant Supreme Court decision that is "outcome determinative" of a cause of action serves "substantial justice," which *Pierce* also addresses. *Fleming v. Gulf Oil Corp.*, 547 F.2d 908, 913 (10th Cir.1977).

82. The aforesaid activities of defendants constituted, and were in furtherance of, schemes and artifices to defraud which were devised or intended to be devised by said defendants. PAM ... alleges that defendants, and each of them, employed the mails and wire or telephonic communications in interstate commerce on more than one occasion in order to execute such schemes or artifices, in violation of 18 U.S.C. sections 1341 and 1343.

83. Said acts of defendants constitute "racketeering activities" under 18 U.S.C. section 1961(1); and at least one such act, with respect to each defendant, occurred within ten years after the commission of a prior such act, so that said defendants are guilty of a 'pattern of racketeering activity' under 18 U.S.C. section 1961(5) ...

84. Penn Square Bank, First Penn (Corp, the bank's holding company), and Peat Marwick are each an 'enterprise' under 18 U.S.C. 1961(4), and are each involved in interstate commerce; and all said defendants are 'persons' under 18 U.S.C. section 1961(3).

85. Said defendants conducted and participated in the conduct of the aforesaid enterprises' affairs through a pattern of racketeering activity, in violation of 18 U.S.C. section 1962(c), and said defendants conspired to do so, in violation of 18 U.S.C. section 1962(d).

Second Amended Complaint, para. 82–85, at 60–61 (July 11, 1983).

Many constituent actions were necessary to prepare the audit report, but it was a single, unified transaction. Viewed in the light most favorable to PAM, the complaint is insufficient.

Although *Sedima* did not reach the "pattern" issue, the Court addressed the elements of a "pattern" in terms of both numbers and relationships:

"As many commentators have pointed out, the definition of a 'pattern of racketeering activity' differs from the other provisions in § 1961 in that it states that a pattern 'requires at least two acts of racketeering activity,' § 1962(5) (emphasis added), not that it 'means' two such acts. *The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.'* The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: 'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.' S.Rep. No. 91–617, p. 158 (1969) (emphasis added).
*Sedima,* 53 U.S.L.W. at 5038, n. 14.

The recent case of *Northern Trust Bank/O'Hare v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985), applied *Sedima's* interpretation of RICO to a kickback scheme including several separate entities, payments and bank accounts. The Inryco court reasoned that " 'pattern' ... connotes a multiplicity of events. Surely the continuity inherent in the term presumes repeated criminal activity, not merely repeated acts to carry out the same criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.' (citation)." On this basis, *Inryco* held that several mailings in furtherance of the on-going kickback scheme did not establish a RICO "pattern."

This Court agrees with the court in *Inryco* that, in light of *Sedima,* proper emphasis must be placed on "pattern" as an independent component of a RICO claim. *Inryco,* at 831. The pattern requirement, as one of the elements of a civil RICO claim, must be "strictly adhered to." *Ralston v.*

*Capper,* 569 F.Supp. 1575, 1580 (E.D. Mich.1983). PAM's claim against Peat Marwick is not based on a "pattern", as that term was elaborated in *Sedima* and *Inryco,* but arises simply from one engagement to perform one audit of Penn Square Bank.²

The terms of this order extend as well to the motion of Wood Products Credit Union in Cause No. CIV–84–1663–A to reinstate its RICO claim.

## Discussion

### RICO allegations in Cause No. 84–1612–A

Cause No. 84–1612–A initially was filed by the Receiver of Penn Square against the Bank's officers, directors and auditors. Peat Marwick was named as a defendant. Peat filed third party complaints against PAM and the credit union plaintiffs in the consolidated cause No. 82–1357–A, as well as against several out-of-state banks that had conducted business with Penn Square. PAM counterclaimed against Peat in the third party action, and the issues between PAM and Peat in No. 84–1612–A resemble those between them in No. 82–1357–A. Therefore, much of the preceding discus-

sion is pertinent to the later action. However, the "enterprise" and "pattern of racketeering activities" alleged in PAM's 84–1612–A counterclaim differ slightly from its earlier complaint.

The "enterprise" alleged in 84–1612–A is Peat's "providing certain auditing services to its various clients, including Penn Square Bank." After identifying the enterprise, the counterclaim treats various financial relationships among Peat, its other customers and Penn Square, and alleges efforts by the Bank directors to salvage or conceal the Bank's liquidity problems. (There is no allegation that PAM itself conducted business with Peat directly or with Peat's other clients.) PAM then avers:

"77. In its conduct of and participation in the enterprise commencing no later than December 1981 and thereafter, Peat Marwick engaged in a pattern of racketeering activities in violation of 18 U.S.C. § 1962(c), which included its engagement in a fraudulent device, scheme, and artifice to disseminate false and misleading information regarding the condition of Penn Square Bank in order to further the financial interests of its various clients and the Bank, ... which involved mail

2. In reaching this conclusion, the court does not decide whether the association among the defendants here constituted an "enterprise" (*see, U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528–29, 69 L.Ed.2d 246 (1981); *U.S. v. Weinstein,* 762 F.2d at 1537; Anno. 52 A.L.R. Fed. 818 (1981). *Turkette* defined an "enterprise" as a "group associated together for a common purpose of engaging in a course of conduct," and held that the existence of an enterprise is established by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. *The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise."* 452 U.S. at 583, 101 S.Ct. at 2528–29; *Joseph v. Algemene Bank Nederland NV.,* 592 F.Supp. 141, 146 (W.D.Pa.1984). Nor does the court express an opinion as to whether there was a sufficient nexus between the alleged racketeering activity and the "enterprise," to establish that the enterprise was "conducted" through a pattern of racketeering, within the meaning of *Sedima* and *Zang. See U.S. v. Provenzano,* 688

F.2d 194, 200 (3d Cir.1982); *cert. denied,* 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634; *U.S. v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981) (if predicate racketeering acts unrelated to enterprise, no RICO liability attaches). It is also unnecessary to address the issue of relatedness among the predicate acts, an issue which has elicited conflicting decisions. Some courts require that the racketeering acts "must have been connected with each other by some common scheme, plan or motive so as to constitute a pattern and not simply a series of disconnected acts." (*Inryco,* discussing *U.S. v. Starnes,* 644 F.2d 673 (7th Cir.1981), *cert denied,* 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 101 (1981). Others take the position that the predicate acts "need not be related to each other but must be releated to the affairs of the enterprise." *U.S. v. Phillips,* supra, *U.S. v. Weisman,* 624 F.2d 1118, 1122–23 (2d Cir.1980), *cert, denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980).

and wire fraud indictable under 18 U.S.C. §§ 1341 and 1343.

"78. Said acts of Peat Marwick constitute 'racketeering activities' under 18 U.S.C. § 1961(1), ..."

 The "pattern" here alleged is Peat's "scheme ... to disseminate false and misleading information regarding the condition of Penn Square Bank." Assuming, arguendo, that such a "scheme" existed and that multiple wire or telephone communications were made in its furtherance, it remains apparent that any statements were merely constituents of a single, unified activity. This is not a situation where several distinct torts or crimes are committed over the course of an enterprise; here the court finds only a series of related statements that PAM tries to splinter into the several elements of a civil RICO cause of action.

Just as a series of kickback payments did not amount to a pattern in *Inryco*, Peat's sequential representations in furtherance of its alleged "scheme" do not constitute a pattern. The requirements of § 1962(c) are not satisfied through multiplicity in pleading. Count IV of PAM's counterclaim fails to state a claim for relief.

### Conclusion

PAM's motion to vacate this Court's order of November 26, 1984, is DENIED. PAM's RICO claims remain dismissed in Cause No. CIV–82–1357–A, as are Wood Product's RICO claims in Cause No. CIV–84–1663–A and Count IV of PAM's counterclaim in Cause No. CIV–84–1612–A.