Beulah M. GRANT, Plaintiff,

v.

UNION BANK, a Utah banking corporation, and Does 1 through 15, Defendants.

Civ. No. C85–882G.

United States District Court, D. Utah, C.D.

Feb. 28, 1986.

Richard F. Bojanowski, Salt Lake City, Utah, for plaintiff.

John Knapp Baird, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

**J. THOMAS GREENE, District Judge.**

This matter came on regularly for hearing on defendant Union Bank's Motion to Dismiss on December 11, 1985. Plaintiff was represented by Richard F. Bojanowski, and defendants were represented by John Knapp Baird. Memorandums of law were lodged with the Court, and counsel for the parties presented extensive oral argument to the Court, after which the matter was taken under advisement. The Court now being fully advised renders the following Memorandum Decision and Order.

### FACTS

Jurisdiction of this Court is invoked for alleged violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. Plaintiff asserts two claims under RICO, and seven additional pendent claims under Utah contract and tort law. Since this matter is before the Court on Motion to Dismiss, allegations set forth in plaintiff's 23 page Complaint are taken as true for purposes of this decision.

Plaintiff was the president of Typewriter Co., Inc., which opened for business in Midvale, Utah in April 1979. It is alleged that plaintiff developed a relationship with the bank for purposes of financing certain aspects of her business, and that the bank became her financial adviser in all aspects of her business. She claims to have relied almost exclusively on the expertise of bank representatives concerning money matters and expansion of her business. Plaintiff received an SBA guaranteed loan through the bank in July of 1980 which she personally guaranteed and secured with some land in Sandy, Utah. Plaintiff claims to have met regularly with various officers and employees to discuss, among other things, the feasibility of expanding her typewriter company business to include office furniture and getting more office and floor space for display.

In early 1981 additional space became available adjacent to plaintiff's business. She spoke with Mr. Scott Seare, a bank vice president, concerning the need for $45,-000.00 to $55,000.00. Mr. Seare allegedly assured her that obtaining a second SBA loan would "pose no problem" and that the equity she had in commercial property "almost guaranteed" obtaining the loan. In anticipation of an SBA loan, on June 2, 1981, pursuant to a line of credit, the bank loaned to plaintiff's company $50,000.00 which became due in full on November 30, 1981. The loan was personally guaranteed by plaintiff. It was contemplated by the bank and the plaintiff that the obligation would be paid when the second SBA loan was obtained. However, on August 1, 1981, the SBA advised the bank that the loan application had been declined, and it was again reviewed and declined in October. In December, the plaintiff and her company were in default on the $50,000.00 loan from the bank and the bank initiated legal proceedings.

Interest on the $50,000.00 note was set at "prime plus three," adjusted quarterly. The actual interest paid was 23% plus. Although a second SBA loan was sought in June 1982, which was to be based upon reappraisal of plaintiff's property at a value of $160,000.00 greater than before, such was never obtained because plaintiff took out bankruptcy as did her company.

Plaintiff alleges violation by defendants of RICO in two separate counts, for claimed fraud relating to interest charged based upon the prime rate (Seventh Count) and for claimed fraudulent misrepresentations in an oral agreement concerning the SBA loan which was never extended (Eighth Count). The "pattern of racketeering activity" alleged as to each fraudulent scheme is use of the United States mails and transmission in interstate commerce by means of wires at least twice in a ten year period, i.e., "not less than two acts of 'racketeering activity.'" The mail and wire fraud acts constitute the "predicate acts" upon which the RICO counts are based.

*Prime Rate Count*

Plaintiff alleges that defendants falsely and fraudulently represented to plaintiff that the interest charged on the Prime-tied loan was based on the bank's "prime rate," but that in fact the interest charged was not the bank's lowest commercial rate. However, plaintiff specifically alleges that "[a]t no time was the plaintiff advised as to what 'prime plus three' meant, what prime rate meant or how the BANK arrived at a set interest rate."

*SBA Loan Count*

Plaintiff alleges that defendants falsely and fraudulently represented to plaintiff that they were honestly and in good faith complying with an agreement between the bank and plaintiff concerning a contemplated SBA loan, when in truth and in fact this was part of a scheme to defraud plaintiff. However, plaintiff specifically alleges as to the agreement in question that the bank vice president "assured the plaintiff that the obtaining of a second SBA loan would pose no problem and that the plaintiff was almost guaranteed to obtain the loan...."

## ANALYSIS

Defendants' urge dismissal of plaintiff's Complaint on at least six separate grounds, each of which will be considered.

1. *Application of RICO to ordinary commercial disputes.*

Defendant argues that the real purpose of RICO is to proscribe truly criminal activity and that its treble damages sanctions do not and should not reach ordinary commercial disputes. In this connection, defendants urge that even if commercial loans were extended by banks at rates under the prime rate, this has been such a widespread commercial practice that it could not be regarded as conduct of a criminal nature. That argument begs the question. Indeed, the practice of loaning money at or below the prime rate may well be a widespread commercial practice, and of itself may not be criminal in nature. We need not pass on that point, however, because plaintiff's complaint alleges that defendants engaged in a scheme to obtain money by fraudulent pretenses and representations regarding the interest rate to be applied to plaintiff's line of credit. Obtaining money by false pretenses clearly falls within the definition of criminal activity and is specifically prohibited by federal law when the U.S. Postal Service or wires are used to further the alleged scheme. *See Morosani v. First National Bank of Atlanta*, 703 F.2d 1220 (11th Cir.1983).

Defendant further suggests that RICO should not be applied to legitimate businesses. The overwhelming weight of authority is to the contrary. The most recent construction of the RICO statute by the Supreme Court so states:

Congress wanted to reach both "legitimate" and "illegitimate" enterprises.... The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences. The fact that § 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued.... "[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." ...

It is true that private civil actions under the statute are being brought almost

solely against such defendants, rather than against the archetypical, intimidating mobster. Yet this defect—if defect it is—is inherent in the statute as written, and its correction must be with Congress. It is not for the judiciary to eliminate the private action in situations where Congress has provided it simply because plaintiffs are not taking advantage of it in its more difficult applications.

*Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985). Also, the Supreme Court fortified the view that the RICO statute, literally interpreted, does reach and cover ordinary commercial activity, holding that there is no requirement that a private action under RICO can proceed only against a defendant who has been convicted of a predicate act or a RICO violation. *Id.* 105 S.Ct. at 3282–84.

### 2. *Standing*

Plaintiff brings this action in her individual capacity under RICO for injuries allegedly inflicted upon the corporation, and for injuries allegedly inflicted upon her as personal guarantor of the corporate line-of-credit. The defendant argues that the plaintiff lacks standing under the "any person" language of 18 U.S.C. § 1964 to sue in her individual capacity on behalf of the corporation. The defendant does not address plaintiff's standing or lack thereof as to plaintiff's claimed injury as guarantor of the loan.

The RICO statute provides in pertinent part that "[a]ny person injured in his business or property by reason of violation of section 1962 ... may sue therefor in any appropriate United States District Court...." Assuming proper pleading of a violation of section 1962, the question becomes who was the victim of the alleged violations. The representations regarding the SBA loan and the prime interest rate were made to plaintiff in the context of improvement and expansion of the corporation. Plaintiff's role in the transactions was as agent for the corporation. Although plaintiff may have been a shareholder, employee, director, and officer of the corporation, any injury incurred was actually sustained by the corporation first, and the plaintiff only incidentally or derivatively. Applying basic principles of corporate law, the Court agrees with defendant that where the corporation is defrauded, the corporation has a cause of action against the wrongdoer. Assuming the requisites of RICO have been met, the corporation, as the "person" injured, would be entitled to take advantage of RICO's treble damages sanctions. An action to redress injuries to the corporation by those derivatively injured through diminution in value of the corporate assets or loss of job is inappropriate and must be dismissed for lack of standing. The court in *Warren v. Manufacturers National Bank,* 759 F.2d 542 (6th Cir.1985), addressing similar factual and legal questions, also concluded that a person in his or her individual capacity does not have standing to redress corporate injuries through litigation. In addition to applying traditional principles of corporate law to the question, the court suggested the following policy argument:

> Allowing every shareholder, employee and creditor a cause of action for injuries derivative of those suffered directly by a corporation does not just permit a vast amount of litigation to be brought in federal court that previously could only have been brought in state court, but creates a potential avalanche of suits that previously could not have been brought at all.

*Id.* at 545. We are persuaded by the reasoning set forth in *Warren.* Only the corporation in its own name can bring an action under section 1964 for injuries allegedly caused it under section 1962. The court's ruling on standing should not be interpreted to extend to plaintiff's standing to sue for injuries she may have sustained as personal guarantor of the corporate line-of-credit. We do not reach that question because the court dismisses the action for other reasons.

### 3. *"Person" and "Enterprise"*

In this action the plaintiff is suing the bank as a "person" under Section 1962(c) and also is alleging that the bank is the "enterprise" conducted by a pattern of racketeering activity. Section 1962(c) makes it unlawful for a person "employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity ..." A "person" includes "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The term "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). It is clear from the language that a corporation can qualify under both definitions. The question is whether a corporation can qualify as both *at the same time* under Section 1962(c). Defendant Union Bank contends that plaintiff must distinguish between a "person" and an "enterprise" under Section 1962(c) because the statute contemplates a violator who conducts his or its affairs through an enterprise. This issue has received significant judicial attention recently. Most courts which have passed on the question agree with defendant's contention. *See, e.g., Bennett v. United States Trust Co. of New York,* 770 F.2d 308, 315 (2d Cir.1985) (the plain language of the statute clearly envisions two entities; the distinction comports with legislative intent; and the distinction "focuses the section on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity"), *cert. denied,* — U.S. —, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *B.F. Hirsch v. Enright Refining Co.,* 751 F.2d 628, 634 (3d Cir.1984) ("a violation of section 1962(c) by a corporate entity requires an association with an enterprise that is not the same corporation"); *United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190 (4th Cir.1982) (" 'enterprise' was meant to refer to a being different from, not the same as or part of,

the person whose behavior the act was designed to prohibit"), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Haroco, Inc. v American National Bank & Trust Co.,* 747 F.2d 384, 400 (7th Cir.1984) ("section 1962(c) requires separate entities as the liable person and the enterprise which has its affairs conducted through a pattern of racketeering activity"), *aff'd on other grounds,* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Bennett v. Berg,* 685 F.2d 1053, 1061 (8th Cir. 1981) (the defendant may not be both the person and the enterprise), *aff'd in pertinent part en banc,* 710 F.2d 1361 (8th Cir.), *cert. denied sub. nom., Prudential Insurance Co. v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984) ("If Union Bank is the enterprise, it cannot also be the RICO defendant"). *But see United States v. Hartley,* 678 F.2d 961, 988 (11th Cir.) ("A corporation may be simultaneously both a defendant and the enterprise under RICO."), *reh. denied,* 688 F.2d 852 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1014 (1983).

It is the view of this court that under section 1962(c) of the statute two distinct entities are contemplated, and that the sanctions of RICO extend only to "persons," and not to "enterprises." Therefore, "persons," as distinct from "enterprises," are the only appropriate defendants in a Section 1962(c) action. As shown by the above decisions, the enterprise is the instrument, often passive, and may be the victim of the culpable person's activities. As one court stated, because section 1962(c) contemplates misconduct by employees of a corporation, "it would make little sense to hold a corporation liable under RICO for the misconduct of lower level employees, at least where it appears that the corporation is a passive instrument or even a victim of racketeering activity." *Haroco, Inc. v. American National Bank,* 747 F.2d 384, 401 (7th Cir.1984), *aff'd on other grounds,* — U.S. —, 105 S.Ct.

3292, 87 L.Ed.2d 361 (1985).[1] We agree. Therefore, we follow the majority view that a corporate entity may not simultaneously be the "enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering activity. Whether this defect could be cured by amendment as plaintiff asserts need not be determined since we find the complaint to be fatally defective on other grounds.

### 4. *Specificity of Pleading*

Defendants urge dismissal of the claims based upon lack of specificity in the complaint to establish probable cause that the alleged acts of mail and wire fraud actually were committed. That standard of specificity for pleading RICO claims was carefully explained by Chief Judge Jenkins of this Court. Judge Jenkins held that because Section 1961(1) defines "racketeering" activity as an act "indictable" under certain federal criminal statutes, the underlying or predicate crimes must be pled with sufficient specificity to establish probable cause that a crime has been committed. *Bache Halsey Stuart Shields, Inc., v. Tracy Collins Bank and Trust*, 558 F.Supp. 1042, 1044–47 (D.Utah 1983). *See also Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667 (N.D.Ga.1983) (following *Bache Halsey*). Judge Jenkins found that before a court could assess the merits of the plaintiff's treble damages claim, "it must determine whether there is probable cause to believe the named defendant committed the alleged predicate crimes. That determination is possible only if the factual basis of those 'acts of racketeering' is set out with particularity. Thus, a factual statement similar to a bill of particulars is needed in pleadings that allege a violation of the RICO treble damages provision." *Bache Halsey*, 558 F.Supp. at 1045–46.

Significant judicial attention recently has been given to Rule 9(b) pleading requirements applicable to predicate acts under RICO involving alleged fraud. Strict and liberal trends of construction have emerged. Those cases giving a strict construction to Rule 9(b) are analogous to the position set forth in *Bache Halsey*, and generally require very specific allegations of time, place, content of the misrepresentation, persons involved, and mode of communication. Such strict pleading requirements are consistent with the policies that underlie Rule 9(b), which include giving adequate notice to the defendant, eliminating complaints that merely seek to obtain discovery of unknown fraud, and protecting defendants from reputation injury that would result from frivolous or unfounded charges of wrongdoing. See Bisceglie, *The Importance of Pleading Fraud with Partiicularity in Civil RICO Actions*, 2 RICO L.Rep. 20, 20 (July 1985). Courts giving a liberal construction to Rule 9(b) find pleadings of fraud under RICO to be adequate where defendants are given sufficient notice of the circumstances of the fraudulent scheme. Under this line of cases, failure to allege specific dates, places, contents of mailings or telephone calls may not be fatal to the complaint. Those courts consider

1. The *Haroco* court analyzed the relevant policies and potential consequences of its conclusion that under section 1962(c), "enterprise" and "person" must be distinct entities. The concern is that the actual perpetrators be held responsible for the RICO violations. The enterprise may play the various roles of perpetrator, instrument, prize or victim. The *Haroco* court, following Professor Blakey's discussion in *The Rico Civil Fraud Action in Context*, 58 Notre Dame Law 237, 307–25 (1982), found that the subsections under section 1962 accommodate and account for the various roles the enterprise might take. Under section 1962(c), the *Haroco* court found, the "person," as distinct from the "enterprise," is contemplated as the perpetrator. Under section 1962(a), that court states, a person may be a corporation that uses the proceeds of a pattern of racketeering activity in its operation. In that way, the corporation-enterprise would be liable under RICO when it is actually the beneficiary of the pattern of racketeering activity, but not when it is the instrument, prize or victim. "This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering activity, not those who are victimized by it." *Haroco*, 747 F.2d at 401–02.

This Court does not pass on the meaning of section 1962(a) because that statute is not before us. We agree with the *Haroco* court, however, that the target of RICO should be and is the actual perpetrators and beneficiaries of racketeering activity.

some of the realities of particular fact situations, such as the complexity of the fraudulent scheme and the transactions and whether the plaintiff has access to all of the relevant facts. This view, artfully articulated by Judge Winder of this Court in *Cooper v. Zions First National Bank*, No. NC84–00980W (Nov. 15, 1984) allows a balance between Rules 8 and 9 of the Federal Rules of Civil Procedure. Rule 8 sets forth the general principles of notice pleading while Rule 9 requires that circumstances involving fraud or mistakes be stated with particularity. Judge Winder deems adequate notice to the defendant to prepare a responsive pleading to be the most significant consideration in determining the necessary detail for the allegation.

The approach of Judge Jenkins in *Bache Halsey* as compared with the approach of courts which strictly construe Rule 9(b) allegations of fraud under RICO may be philosophically different. Judge Jenkins' view is based upon the underlying criminality or indictability of defendant's conduct under RICO, while the Rule 9(b) courts' views are based upon the policies of pleading fraud in a wholly civil context. Both approaches, however, require stringent pleading. It is doubtful that the courts which stictly construe Rule 9(b) would require more particularity with reference to plaintiffs pleading the predicate acts for RICO than they would as to other causes of action pleading fraud. It may be that Judge Jenkins' approach could be more demanding but there appears to be little practical difference.

■ Although the RICO statute is technically civil in this context, the racketeering activities which form the basis for liability constitute specified, indictable criminal offenses. The Supreme Court has determined that a prior criminal conviction is not a prerequisite to filing a civil RICO action. *Sedima*, 105 S.Ct. at 3282–84. However, because the RICO statute is based upon criminality it seems appropriate that the pleadings be sufficiently particular to show the indictability of the alleged offender. We consider this to be an appropriate requirement in view of the statutory language and the far reaching sanctions of RICO.

■ In view of the foregoing, this Court deems plaintiff's complaint to be wholly inadequate. The allegations of mail and wire fraud do not specify dates or contents of the alleged mail and wire transmissions, and otherwise do not show with sufficient particularity the indictability of the defendants. Perhaps these defects could be cured by amendment, but the court finds the Complaint to be fatally defective on other grounds.

5. *Pleading Essential Elements of Mail and Wire Fraud*

■ It is urged as to both the prime rate and the SBA loan counts that plaintiff's complaint fails to assert facts sufficient to show the essential element of specific intent required under the mail and wire fraud statutes. Both statutes respectively proscribe mail or wire communications pursuant to a "scheme or artifice to defraud." *See* 18 U.S.C. §§ 1341, 1343. Both statutes require that the perpetrator formulate the specific intent to commit fraud. *United States v. Kent*, 608 F.2d 542 (5th Cir.1979) (mail fraud), *reh'g denied*, 611 F.2d 882 (5th Cir.), *cert. denied sub nom.*, *Patrick Petroleum Corp. v. United States*, 446 U.S. 936, 100 S.Ct. 2153, 64 L.Ed.2d 788 (1980); *United States v. Cowart*, 595 F.2d 1023 (5th Cir.1979) (wire fraud); *United States v. Dorfman*, 532 F.Supp. 1118 (D.Ill. 1981) (wire fraud). Plaintiff's conclusory allegations of a scheme to defraud are not supported by sufficent allegations to evidence specific intent. As to the SBA count, the complaint does not allege that the bank promised or guaranteed an SBA loan. To the contrary, plaintiff's allegation that the bank represented that the loan was "almost guaranteed" supports neither an alleged scheme to defraud nor the specific intent to commit fraud. The facts alleged negate essential elements of fraud and render the pleading fatally defective. As to the prime rate count, the complaint is less than clear in the factual assertion of fraud. The complaint does not allege that the bank

represented that "prime" meant the bank's lowest commercial rate. To the contrary, it is alleged that the bank did not advise plaintiff as to what "prime" meant. It is apparent from the complaint that the plaintiff was uninformed as to the bank's meaning of "prime" and may have misunderstood. There may be a factual question regarding the bank's awareness of the misunderstanding. But even taking the facts in the light most favorable to plaintiff, it does not appear as pleaded that those facts rise to the level of a scheme or artifice to defraud or the specific intent to commit fraud. However, the court need not resolve that issue because the complaint is fatally insufficient as to the SBA count which renders the pleading defective for lack of a "pattern of racketeering activity."

### 6. *Pattern of Racketeering Activity*

Assuming that the required predicate acts have been properly pleaded under the prime interest rate count, the final question is whether plaintiff has adequately pleaded the existence of a "pattern" of racketeering activity. The defendant contends that she has not. Under the statute a "pattern of racketeering activity" requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Many courts which have struggled with the definition of "pattern" have found the statutory language to be mostly unhelpful. In *Sedima, S.P.R.L. v. Imrex Co.*, 105 S.Ct. 3275 (1985), the question of what constitutes a "pattern" was not before the Court, but the Court elaborated on the meaning of "pattern" in what may become an oft quoted and very notable footnote:

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. *The implication is that while two*

*acts are necessary, they may not be sufficient.* Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that *two isolated acts of racketeering activity do not constitute a pattern.* As the Senate Report explained: "The target of [RICO] is thus *not sporadic activity.* The infiltration of legitimate business normally requires more than one 'racketeering activity' and the *threat of continuing activity* to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a *relationship*.... So, therefore, *proof of two acts of racketeering activity, without more, does not establish a pattern* ...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also *id.*, at 35193 (statement of Rep. Poff) (RICO "not aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are *not isolated events.*" 18 U.S.C. § 3575(e). (Emphasis added).

*Id.* at 3285 n. 14.

■ Although *Sedima* allows a broad application of the RICO statute, it is manifest that "RICO is not so broad as to encompass the actions of every defendant who commits two proscribed acts." *Alexander Grant & Co. v. Tiffany Industries*, 770 F.2d 717, 718 n. 1 (8th Cir.1985). The statute requires something more. Indeed, the "pattern of racketeering activity" is the main factor that distinguishes RICO from the underlying predicate acts and allows for treble damages sanctions. Surely as *Sedima* explains, a pattern does not consist

of two or more *isolated* criminal events. The continuity and relationship implicit in the concept of "pattern" would clearly be missing. On the other hand, two or more criminal transactions or episodes with the "same or similar purposes, results, participants, victims or methods of commission," if properly pleaded with the attendant racketeering activity, would raise a question of fact as to pattern. The question here is whether the requisite "continuity and relationship" set forth in *Sedima* to evidence a "pattern" is established by a single episode or transaction (prime rate loan), even though supported by "not less than two" predicate acts of mail or wire fraud. This Court is of the opinion that the concept of "pattern" under civil RICO cases contemplates multiple transactions or episodes, not just multiple acts to promote the same transaction or episode. Without such interrelated transactions or episodes, there would be no "continuity and relationship." This is what distinguishes RICO from the predicate acts.

Two recent district court decisions support this line of reasoning. In *Northern Trust Bank/O'Hare v. Inryco, Inc.*, 615 F.Supp. 828 (N.D.Ill.1985), the court analyzed the meaning of "pattern" as applied to an alleged kickback scheme under a construction project. The plaintiff alleged three separate kickback payments that utilized the mails in furtherance of the scheme. The *Inryco* court reasoned that "'pattern' ... connotes a multiplicity of events. Surely the continuity inherent in the term presumes repeated criminal activity, not merely repeated acts to carry out the same criminal activity. It places a real strain on the language to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity.'" *Id.* at 831. The *Inryco* court, citing *United States v. Moeller*, 402 F.Supp. 49, 57–58 (D.Conn.1975), found the multiple acts that occurred in the course of a single criminal episode insufficient to show a "pattern of racketeering activity." In *Professional Assets Management, Inc. v. Penn Square Bank, N.A.*, 616 F.Supp. 1418 (W.D.Okla.1985), the plaintiff alleged

a RICO violation in connection with an audit report prepared by the defendant. The court recognized that "[m]any constituent actions were necessary to prepare the audit report"; the court found, however, that the report was "a single, unified transaction." *Id.* at 1421. With that in mind, the court stated:

> The 'pattern' here alleged is Peat's 'scheme ... to disseminate false and misleading information regarding the condition of Penn Square Bank.' Assuming, arguendo, that such a 'scheme' existed and that multiple wire or telephone communications were made in its furtherance, it remains apparent that any statements were merely constituents of a single, unified activity. This is not a situation where several distinct torts or crimes are committed over the course of an enterprise; here the court finds only a series of related statements that [plaintiff] tries to splinter into several elements of a civil RICO cause of action.

*Id.* at 1423.

■ In this case plaintiff has pleaded the SBA count and the prime interest rate count as separate RICO violations, alleging "not less than two" mail or wire communications as to each count. As discussed above, the SBA count fails for lack of essential elements of a scheme or artifice to defraud which elements are negated in the pleading. We are left with the question whether the multiple mail and wire communications in furtherance of the prime rate count alone are sufficient to show a "pattern of racketeering activity." It is clear as to the prime rate count that plaintiff alleges a single transaction between herself and the bank, not multiple criminal episodes or transactions. We consider that multiple mail and wire communications in furtherance of that single allegedly fraudulent loan are insufficient to show a pattern under RICO. Taken together, the two allegedly fraudulent transactions—the SBA count and the prime interest rate count—might have presented a question of fact as to "pattern of racketeering activity." But the Court will not

grant plaintiff leave to amend the complaint to satisfy these pleading requirements because under any construction of the facts the SBA count could not rise to the level of criminal fraud. It is also doubtful whether the prime rate count could be pleaded sufficiently, but we do not reach that question because without both counts plaintiff is unable to show that the prime rate loan transaction with the bank was anything but an isolated transaction. Accordingly, this Court holds that the Complaint fails to show a "pattern of racketeering activity."

For the reasons aforesaid, defendants' Motion to Dismiss is granted as to the claims asserted in alleged violation of RICO. The other claims set forth in the Complaint, admittedly pendent, are also dismissed without prejudice to bringing them in state court. No discovery has been conducted and there is no overriding reason of judicial economy or otherwise which would suggest that this Court ought to retain jurisdiction notwithstanding dismissal of the federal claims. This Memorandum Decision and Order will suffice as the Court's action on this Motion; no further Order need be prepared by counsel.

IT IS SO ORDERED.